UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>RAUL ORTIZ-MIRANDA,<br><br>    Defendant. | Crim. No. 95-029-11 (JAF) |

**OPINION AND ORDER**

Defendant, Raúl Ortiz-Miranda, previously moved for a reduction of his sentence pursuant to the amended sentencing guidelines for cocaine base ("crack"). (Docket No. 3361.) We denied this motion, stating that the quantity of the other narcotics in this conspiracy was enough to justify Defendant's original base offense level. (Docket No. 3366.) The First Circuit vacated our order and remanded for further consideration. United States v. Ortiz-Miranda, No. 09-1327 (1st Cir. Jan. 6, 2010). Defendant moves for the preparation of a new presentencing report ("PSR") and for leave to be present in court for any potential resentencing. (Docket Nos. 3429; 3433; 3438.) For the reasons stated below, we deny Defendant's motions.

In November 2007, the U.S. Sentencing Commission (U.S.S.C.) sought to lessen the disparity between the treatment of cocaine powder and crack offenses by dropping the base offense level for possession of crack by two levels for any amount less than 4.5 kg. See U.S. Sentencing Guidelines Manual supp. app. C, amends. 706, 707, 715 (2009).

Crim. No. 95-029-11 (JAF) -2-

Congress has provided that, where the U.S.S.C. lowers a sentencing range pursuant to 28 U.S.C. § 994(o), a defendant previously sentenced to imprisonment under that range may move the court for a reduction in his term of imprisonment. 18 U.S.C. § 3582(c)(2). **This reduction is not as of right** and may be granted only after the court considers both the policy statements of the U.S.S.C. and the sentencing factors of 18 U.S.C. § 3553(a). Id. The U.S.S.C. policy statement on sentencing reductions states that a reduction cannot be granted if applying the amended guideline would not have the effect of lowering the defendant's guideline range. U.S. Sentencing Guidelines Manual § 1B1.10(a)(2)(B) (2009). The commentary to the Guidelines Manual also counsels that public safety and post-sentencing conduct should be considered. Id. § 1B1.10 cmt. n.1(B). The following sentencing factors are among those outlined in 18 U.S.C. § 3553(a):

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct;
>     (C) to protect the public from further crimes of the defendant; and
>     (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a).

We deem it convenient to outline the procedures devised nationwide by courts to deal with the multitude of retroactive crack sentence reductions that the amendments to the

Guidelines generated—the majority of which were expected to have little or no merit. The undersigned, as a member of the U.S. Judicial Conference Committee on Criminal Law and in a joint effort with the U.S.S.C., issued an Administrative Directive on February 15, 2008, detailing the streamlined procedure to be followed in determining the applicability and extent of a reduction. See In re: Petitions for Retroactive Appl. of the Nov. 1, 2007 Amend. to the Crack Cocaine Offense Level Guidelines, No. 08-31 (D.P.R. Feb. 15, 2008), attached as App. 1. In the interest of expedience, the Directive also stated that the disposition of sentencing reductions would be entered on AO Form 247, a simple fill-in-the-blanks Order Regarding Motion for Sentence Reduction, as prepared by the Judicial Conference Committee on Criminal Law. Id.; see also Memorandum from the Hon. Julie E. Carnes, Chair of the Judicial Conference Comm. on Criminal Law (Feb. 20, 2008), available at http://www.ussc.gov/training/DIR8-025.pdf.

## I.

### Factual and Procedural Summary

A comprehensive and detailed factual background appears in an opinion of even date in U.S. v. Moisés Candelaria-Silva, (Cr. 95-029-16, Docket No. 3454). Defendant Ortiz-Miranda was convicted on December 13, 1995, for conspiracy to possess with intent to distribute fifty grams ("g") or more of crack, five kilograms ("kg") or more of cocaine, one kg or more of heroin, and an undetermined quantity of marijuana. He was also convicted of using and carrying a firearm during and in relation to the drug-trafficking conspiracy, in violation of 18

Crim. No. 95-029-11 (JAF) -4-

U.S.C. § 924(c)(1). This second charge was dismissed prior to sentencing as a result of the Supreme Court's decision in Bailey v. United States, 516 U.S. 137 (1995). At sentencing, we found that Defendant had been responsible for conspiring to possess and distribute at least 1.5 kg of crack. (Docket No. 1214.) On the basis of this quantity of crack and quantities of additional narcotics enumerated in the drug-trafficking charge for which Defendant was convicted, we calculated his base offense level at thirty-eight. (Id.) We applied a two-level enhancement due to his use of a firearm, bringing the total offense level to forty. (Id.) Defendant's criminal history category of IV placed his guideline range from 360 months to life. Due to Defendant's criminal history including homicide, and use of assault rifles, we sentenced him to 540 months' imprisonment.

In January 2009, Defendant moved for a sentence reduction under § 3582(c)(2), arguing that his sentence was based on the former guideline for crack. (Docket No. 3361.) The U.S. Probation and Pretrial Services Office ("Probation Office") recommended we deny this motion because Defendant had been held responsible for 30 kg of heroin, which was enough to trigger a base offense level of thirty-eight, regardless of a reduction for crack. (Docket No. 3365 at 2.) We adopted this recommendation and denied Defendant's motion. (Docket No. 3366.) On appeal, the Government conceded that the Probation Office's recommendation had been in error and that no specific quantity of heroin was attributed to Defendant at sentencing. (Docket No. 3482-3.) The First Circuit remanded the case for reconsideration. (Docket No. 3430.)

Crim. No. 95-029-11 (JAF)                                                                                           -5-

One of the Government's chief witnesses, a former coconspirator, testified at trial that Defendant delivered cocaine to the Enrique Catoni housing project in Vega Baja, Puerto Rico, for the Israel Santiago-Lugo organization. (Trial Tr. vol. 34, 2619–20, Docket No. 823.) Santiago-Lugo operated a central distribution point from his base of operations in the Virgilio Dávila housing project in Bayamón, Puerto Rico, from where he supplied his various satellites, including the drug point at Enrique Catoni. Over a seven-year period, this conspiracy encompassed millions of dollars in sales, which represented myriad kilograms of narcotics, from at least six distribution points. The conspirators, armed with various firearms, including AK-47 and AR-15 assault rifles, engaged in a bloody turf war with the rival Rosario brothers gang that resulted in horrific murders not seen in even the most lurid Hollywood gangster movies. In April 1994, Defendant was arrested at his home, where police discovered narcotics, two assault rifles, and ten magazines of ammunition—these magazines included a "snail magazine," which holds over 100 rounds of ammunition. Later that year, Puerto Rico Police Department homicide detective Héctor Del Río Román testified that he stopped Defendant for a traffic violation and discovered cocaine in his vehicle. (Trial Tr. vol. 22, 965–83, Docket No. 750.)

Prior to sentencing, the Probation Office prepared a PSR detailing Defendant's criminal history, which included convictions for car theft, armed robbery, possession of narcotics, and firearms violations. (Docket No. 3365-2 at 56–61.) Most disturbingly, Defendant participated

in the March 1994 kidnapping and murder of José A. Cruz-Rodríguez, for which Defendant was convicted of second-degree murder.

## II.

### Analysis

Defendant argues that because his original base offense level was dependent upon a quantity of crack, he qualifies for a sentence reduction. While Defendant is correct in that he appears to fall into the category of inmates to whom the crack sentencing reduction may apply, we do not agree that such a reduction is warranted in this instance.

In light of the sentencing factors enumerated by Congress in § 3553(a), a reduction of Defendant's sentence would be inappropriate. Section 3553(a)(2)(A) requires we consider whether the sentence reflects the seriousness of Defendant's offense and whether it is a just punishment. Defendant participated in a drug-distribution conspiracy that trafficked massive quantities of cocaine, heroin, and marijuana throughout northern Puerto Rico over many years. Moreover, this was a violent organization that engaged in a deadly gang war in furtherance of the conspiracy. This was a serious crime for which a lengthy sentence was a necessary and just punishment. Furthermore, pursuant to both the commentary to § 1B1.10 and the § 3553(a) sentencing factors, we must consider public safety. Defendant's illegal possession of assault rifles and his serious criminal history of murder and robbery counsel against our granting a sentence reduction. It is the undersigned's opinion that Defendant is a dangerous and violent individual for whom the full 540 months' sentence is necessary to protect the public. Finally,

Crim. No. 95-029-11 (JAF) -7-

we note that Puerto Rico is a major center of importation for illegal narcotics. Defendant's sentence is a valuable deterrent to those who would otherwise seek to follow his lead. For these reasons, we find a sentence reduction would be not only unwarranted but also a material injustice.

As for Defendant's request for a sentencing hearing and leave to attend such a hearing, Federal Rule of Criminal Procedure 43(b)(4) states that a defendant's presence is not required for § 3582(c) proceedings. Furthermore, the sentence reduction under § 3582(c)(2) does not afford defendants a full resentencing hearing. See, e.g., Dillon v. United States, 130 S. Ct. 2683 (2010) ("Section 3582(c)(2)'s text, together with its narrow scope, shows that Congress intended to authorize only a limited adjustment to an otherwise final sentence and not a plenary resentencing proceeding.").

Finally, Defendant made claims of various errors in his original PSR that justified the creation of new PSR before deciding the sentence reduction. We find his claims to be without merit and outside the limited scope of a § 3582 proceeding. The various infirmities that he alleges were inherent in his PSR should have been challenged on direct appeal.

## III.

## Conclusion

For the foregoing reasons, we hereby **DENY** Defendant's motion for sentence reduction under § 3582(c)(2) (Docket No. 3361). We also **DENY** his motions to appear at a resentencing

Crim. No. 95-029-11 (JAF)                                                                                         -8-

hearing (Docket Nos. 3429; 3438) and for the preparation of a new PSR (Docket No. 3433).

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 9th day of November, 2010.

                                                                s/José Antonio Fusté
                                                                 JOSE ANTONIO FUSTE
                                                                 Chief U.S. District Judge